UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMINIC CHIMIENTI, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JANKMAN LLC, d/b/a JACK'S WIFE FREDA, DEAN JANKELOWITZ and MAYA JANKELOWITZ, jointly and severally,<br><br>Defendants. | ECF CASE<br><br>No.: _____<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Dominic Chimienti hereby alleges through his attorneys, Lipsky Lowe LLP, as against Defendants Jankman LLC d/b/a Jack's Wife Freda, Dean Jankelowitz and Maya Jankelowitz as follows:

<u>NATURE OF THE ACTION</u>

1.      Plaintiff Dominic Chimienti worked for Defendants Jankman LLC d/b/a Jack's Wife Freda, Dean Jankelowitz and Maya Jankelowitz (collectively "Defendants") as a server and bartender at the West Village location of their chain of South African-Mediterranean restaurants from approximately February 2015 to March 15, 2020.

2.      Plaintiff alleges on his behalf and other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment, and (ii) unlawfully retaining gratuities.

3.      Plaintiff alleges on his behalf and other similarly situated current and former employees of Defendants and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendants willfully violated the FLSA by unlawfully retaining gratuities.

4.      Plaintiff, on his behalf, alleges that Defendants retaliated against him, by taking away his promotion and raise, for engaging in protected activity of requesting pay for time spent in mandatory manager meetings, violating the Labor Law.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (2).

7.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

8.      Plaintiff was, at all relevant times, an adult individual residing in Nassau County, New York.

9.      Jankman LLC d/b/a Jack's Wife Freda is a domestic limited liability company that is organized under New York law and is authorized to do business in the State of New York, with its principal place of business at 50 Carmine Street, New York, New York 10014.

10.    Upon information and belief, Defendants employ more than 11 employees.

11.    Jack's Wife Freda is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Jack's Wife Freda is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, food, glassware, computers and beverages.

12.    Defendant Dean Jankelowitz owns, operates and controls Jack's Wife Freda's day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees at all relevant times.

13.    Defendant Maya Jankelowitz operates, owns and controls Jack's Wife Freda's day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees at all relevant times.

14.    Each Defendant, either directly or indirectly, has hired or fired Plaintiff and other employees, controlled their work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

<u>STATEMENT OF FACTS</u>

15.    Defendants operate and manage four South African-Mediterranean restaurants in New York, including the West Village location at 50 Carmine Street, New

York, New York, 10004, Soho location at 224 Lafayette Street, New York, New York, 10012 and the Chelsea location at 116 8th Avenue, New York, New York, 10011.

Duties Performed and Hours Worked[1]

16.    Defendants employed Plaintiff as a server and bartender from February 2015 to March 15, 2020, at the West Village location, when had to stop working at the restaurant due to the Covid-19 pandemic.[2]

17.    As a server, Plaintiff was responsible for taking customers' orders and serving them food and beverages.

18.    As a bartender, Plaintiff was responsible for preparing beverages and serving them to Defendants' customers.

19.    In addition to Plaintiff's server and bartender duties, Defendants required him to spend approximately 30 minutes a day performing side work, such as polishing silverware, cleaning, restocking silverware, glassware and the bar, preparing and restocking the garnishes.

20.    Generally, Defendants had their staff work in two shifts: the morning shift, which started at 8:00 a.m. to 4:00 p.m.; and the dinner shift, which started at 4:00 p.m. or 6:00 p.m. and ended at 10:00 p.m. on Sundays, 11:00 p.m. on Mondays through Thursday and 12:00 a.m. on Fridays and Saturdays.

21.    Defendants did not afford 30-minute uninterrupted breaks to their staff during the morning or the dinner shifts.

---

[1] These subject lines are included only for organizational purposes.
[2] The date ranges are estimates based on Plaintiff's memory.

22.     Defendants employed different set of service employees for their morning and dinner shifts each day, employing at least 24 servers, bartenders and runners per week.

23.     During his employment, Plaintiff worked with at least 100 other similarly situated employees, including servers, bartenders and runners.

24.     Plaintiff's schedule varied from week to week but he generally worked an average of 4 days a week, working Monday to Thursday one week and working two work days and two weekend days the next week.

25.     From October 2015 to 2019, Plaintiff generally worked mostly dinner shifts, with only occasionally working a morning shift. In 2020, he more regularly worked morning shifts, working them once or twice per week.

26.     From 2015 to 2019, during the weeks when he worked 4 dinner shifts from Monday to Thursday, he worked from 4:00 p.m. or 6:00 p.m. to 11:00 p.m., averaging 6-hour days and 24 hours per week.

27.     From 2015 to 2019, during the weeks when he worked weekends, he generally worked 2 weekdays from 4:00 p.m. or 6:00 p.m. to 11:00 p.m., averaging 6-hour days, and Friday and Saturday from 4:00 p.m. or 6:00 p.m. to 12:00 a.m., averaging 7-hours days, totaling 26 hours per week.

28.     When he occasionally worked a morning shift, once or twice a week, from 8:00 a.m. to 4:00 p.m., working 8 hours a day, he worked between 23 and 32 hours per week.

29.     From reviewing the schedule, speaking with them and personal observations, Plaintiff knows that other servers and bartenders worked similar or more hours as him.

Compensation

30.     The following chart shows the minimum wage under New York Labor Law for the relevant years for employers with more than 11 employees:

| Year | NY Min. Wage | NY Tip Credit | NY Tip Minimum Wage |
|------|--------------|---------------|----------------------|
| 2021 | $15.00 | $5.00 | $10.00 |
| 2020 | $15.00 | $5.00 | $10.00 |
| 2019 | $15.00 | $5.00 | $10.00 |
| 2018 | $13.00 | $4.35 | $8.65 |
| 2017 | $11.00 | $3.50 | $7.50 |
| 2016 | $9.00 | $1.50 | $7.50 |
| 2015 | $8.75 | $3.75 | $5.00 |

31.     Defendants failed to pay Plaintiff at the required State minimum wage during all years of his employment.

32.     From 2015 to 2017, upon information and belief, Defendants paid Plaintiff the following hourly rates: $5.00 in 2015, with Defendants taking a tip credit of $3.75 against the minimum wage; and $7.50 in 2016 and 2017, with Defendants taking a $1.50 and $3.50 tip credit, respectively, against the minimum wage.

33.     From 2018 to 2020, Defendants paid Plaintiff the following hourly rates: $8.65 in 2018 with Defendants taking a $4.35 tip credit against the minimum wage; and $10.00 in 2019 and 2020 with Defendants taking a $5.00 tip credit.

Unlawful Tip Pool

34.     Plaintiff and other similarly situated employees regularly received cash and credit card tips from the restaurant's customers.

35.     Plaintiff generally worked with up to 2 to 4 other servers, 1 to 2 runners, 1 to 2 bartenders and 1 manager.

36.     In 2019, Defendants started calling managers, "captains."

37.     Defendants' managers had almost strictly managerial duties and handled inventory (ordering and purchasing the necessary supplies), made the weekly schedule, had the authority to and did, in fact, send people home if the restaurant was slow or for performance reasons. They also made recommendations to Defendants on who to suspend, hire and fire and Defendants generally made their employment decisions based on those recommendations.

38.     During their shifts, the managers spent only an insignificant part of their time working as servers, with the vast majority of their time spent managing the restaurant and staff.

39.     During Plaintiff's employment, for both morning and dinner shifts, Defendants had Plaintiff pool his tips with all of the servers, bartenders, runners and one manager per shift.

40.     Several times during his employment, Plaintiff and other similarly situated employees complained about the unlawful tip pool but Defendants did not change their tip pool policy.

41.     Defendants maintain tip sheets and tip books that show the total amount of tips per shift and detail who got paid what amount.

42.     Plaintiff generally received between $3.00 to $80.00 cash tips per week and between $320.00 to $780.00 in credit card tips per week. However, he did not receive

all the tips that customers left him, because Defendants allocated part of his tips to the managers through the tip pool.

43.    Plaintiff heard other members of Defendants' staff, such as servers, bartenders and runner, complain that their tips were improperly shared with the managers at the location where he worked and also at Defendants' Chelsea and Soho restaurant locations.

Labor Law Notice and Wage Statement Violations

44.    Upon information and belief, Defendants did not provide Plaintiff or the other waitstaff with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment

45.    From speaking with them, Plaintiff knows that other servers and bartenders were, like him, were paid below the statutory minimum wage, shared tips with one of the restaurant's managers and were not given the required Labor Law notices.

46.    Upon information and belief, Defendants did not post at the restaurant up to date poster advising Plaintiff and other employees of their right to a minimum wage and overtime premium pay.

47.    Because of their FLSA and Labor Law violations, Defendants were not entitled to claim *any* tip credit against the minimum wage.

48.    Because of Defendants' FLSA and Labor Law violations, Defendants are liable for the difference between the minimum wage and the rate that they paid Plaintiff and other similarly situated employees.

Retaliation Against Plaintiff

49.    In September 2018, Defendants promoted Plaintiff to manager. As part of the promotion, Plaintiff was in manager training for several weeks, including being put on the manager email list.

50.    Defendants informed Plaintiff that once his training was completed, he would get a raise and be paid $30.00 per hour and work a full-time schedule as a manager.

51.    As part of his managerial training, Defendants required Plaintiff to attend a monthly mandatory meeting with all the other managers at the West Village location on his day off or outside of his normal scheduled working hours.

52.    In September 2018, Plaintiff attended at least one mandatory manager meeting on his day off lasting over one hour.

53.    Defendants failed to pay Plaintiff and the other managers for the time spent in the mandatory manager meeting.

54.    In September 2018, Plaintiff complained to Defendant Dean Jankelowitz about being unpaid for the mandatory manager meeting and told him that it takes several hours for him to commute to New York City on his day off and his time should be compensated.

55.    In response to Plaintiff's complaint and request to be paid for the mandatory manager meeting, Defendant Dean Jankelowitz told Plaintiff that he can have a free breakfast instead. Plaintiff reiterated that it is not proper not to pay employees for mandatory meetings. This time, Defendant Dean Jankelowitz responded by telling him

that if he is having an issue with being unpaid for manager meetings, then he can forget the manager training and that he will remain a server.

56.    Defendants retaliated against Plaintiff for requesting to be paid for mandatory manager meetings by taking away his promotion and raise.

57.    As a result of Defendants' retaliation against him, Plaintiff lost career growth and wages.

<u>CLASS ACTION ALLEGATIONS</u>

58.    Plaintiff asserts these allegations and claims on his own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who were servers, bartenders and other comparable tipped positions at any time since December 17, 2015 to the entry of judgment in this case, who were non-exempt employees under the New York Labor Law (the "Class Members").

59.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 100 Class Members exist.

60.    Plaintiff's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

61.     Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

62.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

63.     Plaintiff has the same interest in this matter as all other Class Members and his claims are typical of Class Members'.

64.     Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a.     Whether Defendants employed Plaintiff and the Class Members within the meaning of the Labor Law;

b.     Whether Defendants gave Plaintiff and the Class Members proper notice of the "tip credit" as 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 requires;

c.     Whether Defendants can avail themselves of a tip credit and pay Plaintiff and the Class Members less than the statutory minimum wage;

d.     Whether Defendants withheld tips or gratuities under the Labor Law, violating N.Y. Lab. Law § 196-d;

e.     Whether Defendants failed to provide Plaintiff and the Class Members wages statements under Labor Law § 195.3;

f.     Whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiff and the Class Members are employed;

g.     Whether Defendants are liable for all damages claimed hereunder, including interest, costs and disbursements and attorneys' fees; and

h.     Whether Defendants should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

65.     Under 29 U.S.C. § 206, Plaintiff seeks to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were servers, bartenders and other comparable tipped positions with different titles at any time since December 17, 2018 to the entry of judgment in this case, who were non-exempt employees under the FLSA (the "Collective Action Members").

66.     Plaintiff and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.     Defendants employed the Collective Action Members within the meaning of the FLSA;

b.     Collective Action Members performed similar duties;

c.     Defendants willfully or recklessly violated the FLSA;

d.     Defendants improperly withheld tips or gratuities from Plaintiff and the Collective Action Members, violating 29 U.S.C. § 203(m);

e.     Defendants should be enjoined from such violations of the FLSA in the future; and

f.     The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

## FIRST CAUSE OF ACTION
### FAILURE TO PAY THE MINIMUM WAGE
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

67.    Plaintiff realleges every preceding allegation as if set forth fully herein.

68.    Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff and the Class Members.

69.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiff and the Class Members.

70.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members the statutory minimum wage.

71.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

72.    Defendants paid Plaintiff and the Class Members below the statutory minimum wage.

73.    Defendants were not eligible to take a tipped credit and pay Plaintiff and the Class Action Members below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because Defendants unlawfully attributed a portion of Plaintiff and the Class Action Members' tips to managers.

74.    Defendants are accordingly liable to Plaintiff and the Class Action Members for the difference between the hourly rate at which they paid them and the statutory minimum wage.

75.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the minimum wage.

76.    Due to Defendants' Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>SECOND CAUSE OF ACTION</u>
UNLAWFULLY RETAINED GRATUITIES UNDER THE FLSA
(On Behalf of Plaintiff and the Collective Action Members)

77.     Plaintiff realleges every preceding allegation as if set forth fully herein.

78.     Plaintiff consents, through counsel, to be a party to this action under 29 U.S.C. §216(b).

79.     Defendants employed, and/or continue to employ, Plaintiff and the Collective Action Members within the meaning of the FLSA.

80.     Defendants willfully violated 29 U.S.C. § 203(m)(2)(B) by unlawfully retaining a portion of Plaintiff's and Collective Action Members' gratuities, by unlawfully attributing a portion of their tips to managers.

81.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

82.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff and the Collective Members' compensation.

83.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

84.     Due to Defendants' violations of the FLSA, Plaintiff and the Collective Action Members are entitled to recover from Defendants their unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest and such other legal and equitable relief as this Court deems just and proper.

THIRD CAUSE OF ACTION
UNLAWFULLY RETAINED GRATUITIES
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

85.     Plaintiff realleges every preceding allegation as if set forth fully herein.

86.     Defendants willfully violated the N.Y. Lab. Law § 196-d by unlawfully retaining a portion of the gratuities, by unlawfully remitting them to the managers, that should be remitted to the Class Members.

87.     Due to Defendants' violations of the Labor Law, Plaintiff and the Class Members are entitled to recover from Defendants their unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

<u>FOURTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

88.     Plaintiff realleges every preceding allegation as if set forth fully herein.

89.     Defendants have willfully failed to supply Plaintiff and the Class Members with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

90.     Due to Defendants' violations of Labor Law § 195.3, Plaintiff and the Class Members are entitled to recover from Defendants $100.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
## RETALIATION UNDER THE LABOR LAW
### (On Behalf of Plaintiff)

91.     Plaintiff realleges every preceding allegation as if set forth fully herein.

92.     Plaintiff is an employee under N.Y. Lab. Law § 215.

93.     Defendants are employers under N.Y. Lab. Law § 215.

94.     Plaintiff complaining about unpaid mandatory manager meetings to Defendants and requesting to be compensated for his hours worked, constitutes protected activity under the Labor Law.

95.     Because he complained about Defendants' failing to pay their employees for mandatory manager meetings, Defendants removed Plaintiff from the manager training program and deprived him of the promotion and raise, violating N.Y. Lab. Law § 215.

96.     Due to Defendants' violations of the Labor Law, Plaintiff is entitled to recover from Defendants punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on his behalf and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class Members;

b.    Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members and tolling of the statute of limitations;

c.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

d.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.    An award for unpaid minimum wage under the Labor Law;

f.    An award for unlawfully retained gratuities under the Labor Law and the FLSA;

g.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

h.      An award of liquidated and punitive damages as a result of Defendants' Labor Law violations;

i.      An award of liquidated damages as a result of Defendants' willful FLSA violations;

j.      Equitably tolling the statute of limitations under the FLSA;

k.      An award of pre-judgment and post-judgment interest;

l.      An award of back and front pay;

m.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.      Such other and further relief as this Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions

of fact the Complaint raises.

Dated: New York, New York
       December 17, 2021

LIPSKY LOWE LLP


s/ Douglas B. Lipsky
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com
*Attorneys for Plaintiff and the Putative Class*